TIMOTHY COURCHAINE
United States Attorney
District of Arizona
Jonathan B. Granoff
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
520-620-7300
Jonathan.Granoff@usdoj.gov
Attorneys for Plaintiff

☒ FILED   ☐ LODGED

**Feb 13 2026**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br> Plaintiff, <br> vs. <br> Ahmed Maqbul Syed, <br> Defendant. | CR-24-08825-TUC-JCH(LCK) <br><br> PLEA AGREEMENT |

The United States of America and the defendant agree to the following disposition of this matter:

### PLEA

1. The defendant agrees to plead guilty to Count 2 of the Indictment, which charges the defendant with a Class C felony violation of 18 U.S.C. § 1956(h), Conspiracy to Commit Money Laundering. The parties agree that the remaining count in the indictment will be dismissed at the time of sentencing.

### Elements of the Offense

2. The elements of the offense to which the defendant is pleading guilty are:

CONSPIRACY

  a. First, there was an agreement between two or more people to commit money laundering

  b. Second, the defendant knew the object of the agreement;

      c. Third, defendant joined the agreement with the intent to further its unlawful purpose

CONCEALMENT MONEY LAUNDERING:

    a. Defendant conducted/intended to conduct a financial transaction involving property that represented proceeds of wire fraud.

    b. Defendant knew that the property represented proceeds of some form of unlawful activity;

    c. The defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds

A financial transaction is a transaction involving the movement of funds by wire or other means that affects interstate or foreign commerce in any way, or a transaction that involves the use of a financial institution that is engaged in, or the activities of which affect interstate or foreign commerce in any way.

The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the defendant knew that the property involved in the transaction represented proceeds of some form, though not necessarily which form, of activity that constitutes a felony.

WIRE FRAUD

    a. First, the defendant knowingly [participated in] [devised] [intended to devise] a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations.

    b. Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

    c. Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

d. Fourth, the defendant used, or caused to be used, an interstate [or foreign] wire communication to carry out or attempt to carry out an essential part of the scheme.

### Maximum Penalties

3. The defendant understands that the maximum penalties for the offense to which he/she is pleading are a fine of $ 500,000 (or twice the value of the property involved in the transaction), a term of 20 years imprisonment, or both, and a term of 3 years supervised release. It is a Class C felony.

4. Pursuant to 18 U.S.C. § 3663A, the defendant agrees restitution in this case is mandatory and further agrees to make restitution to the victims listed in this plea agreement or other identified victims in the government's disclosure for all losses to include losses arising from counts dismissed and charges not prosecuted as well as all relevant conduct in connection with those counts and charges as determined by the court at or after sentencing.

5. The defendant agrees to pay a fine unless the defendant establishes the applicability of the exceptions contained in § 5E1.2(e) of the Sentencing Guidelines.

6. Pursuant to 18 U.S.C. § 3013, the defendant must pay a special assessment of $100.00 per felony count. The special assessment is due and payable at the time the defendant enters the plea of guilty, but in no event shall be paid later than the time of sentencing unless the defendant is indigent. If the defendant is indigent, the special assessment will be collected according to the provisions of Chapters 227 and 229 of Title 18, United States Code.

7. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

#### Immigration Consequences

8. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States. The defendant agrees that the defendant has discussed this eventuality with their attorney. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

### STIPULATIONS, TERMS AND AGREEMENTS

#### Agreements Regarding Sentencing

9. Stipulation: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree that:

   a. Any prison sentence shall **not** exceed 108 months.

   b. The defendant agrees to pay mandatory restitution pursuant to 18 U.S.C. § 3663A to the victims listed in this plea agreement or identified in government's discovery as set forth below. The parties agree that there may be other victims entitled to restitution not listed in this plea agreement and the total restitution shall be determined by the Court (at or after sentencing) as to any victims. The parties agree that restitution shall be capped at $5,000,000.

   c. The parties agree to the following offense characteristics pursuant to U.S.S.G. § 2S1.1 and other applicable provisions of the guidelines. Some of the adjustments are disputed as referenced below and will be determined by the court at sentencing:

   (1) The parties agree that the offense level is determined by the offense level for wire fraud (the underlying offense from which the proceeds of fraud were

laundered) because defendant is accountable for the relevant conduct for wire fraud conspiracy and the offense level can be determined as provided in § 2S1.1(a)(1).

(2) The total loss to include any intended loss from the offense will be determined by the court at sentencing. The defendant understands that he will be responsible for any loss associated with any relevant conduct or jointly undertaken relevant conduct relating to his participation in the conspiracy pursuant to the sentencing guidelines analysis. The defendant understands that the court shall determine the total loss and intended loss according to the sentencing guidelines and §1B1.3. The defendant understands and agrees that the government may introduce hearsay into evidence to prove the total loss or any other disputed guideline calculation by a preponderance of the evidence standard. The defendant further understands that the government's position is that he should be held accountable for approximately $2.6 million in intended loss. However, it will be up to the court to determine the total loss under the applicable sentencing guidelines.

(3) The defendant further agrees that the following additional disputed guideline upward adjustments will also be determined by the court at sentencing.

   A. Whether the offense involved a misrepresentation that a defendant or co-conspirators was acting on behalf of a government agency U.S.S.G. § 2B1.1(b)(9)(A);

   B. Whether the defendant knew or should have known that a victim of the offense was a vulnerable victim and the two-level upward adjustment in U.S.S.G. §3A1.1(b)(1) applies;

   C. Whether the two or three level upward adjustment for aggravating role is applicable (U.S.S.G. § 3B1.1(b) or (c)) because the defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive;

(4) The Defendant further agrees and stipulates to the following additional guideline adjustments.

    A. The offense resulted in significant financial hardship to more than 1 victim and the two-level upward adjustment in U.S.S.G. §2B1.1(b)(2)(A)(iii) applies.

    B. Because the defendant has been convicted under 18 U.S.C. §1956, a two-level adjustment applies as per §2S1.1(b)(2)(B).

    C. The parties agree that given the offense involves a significant financial hardship, defendant does not meet the criteria for Certain Zero Point Offenders pursuant to U.S.S.G. § 4C1.1 and the defendant is not entitled to a two-level decrease in the offense level. *See* U.S.S.G. 4C1.1.

10. The defendant agrees not to seek any adjustments in Chapters Two, Three or Four of the Sentencing Guidelines or any "departures" from the Sentencing Guidelines. The defendant acknowledges that if the defendant seeks any such adjustment or departure, the government may withdraw from the plea.

11. Nothing in this agreement precludes the defendant from asking for a variance from the final advisory Sentencing Guidelines Range.

12. <u>Recommendation: Acceptance of Responsibility</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), if the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Guidelines sentencing offense level pursuant to U.S.S.G.§ 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

13. <u>Non-Binding Recommendations</u>. The defendant understands that recommendations under Fed. R. Crim. P. 11(c)(1)(B) are not binding on the Court. The

defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

14. The defendant understands that if the defendant violates any of the conditions of the defendant's supervised release, the supervised release may be revoked. Upon such revocation, notwithstanding any other provision of this agreement, the defendant may be required to serve a term of imprisonment or the defendant's sentence may otherwise be altered.

15. The defendant and the government agree that this agreement does not in any manner restrict the actions of the government in any other district or bind any other United States Attorney's Office.

16. The defendant understands and agrees to cooperate fully with the United States Probation Office in providing (a) all criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines; (b) all financial information, i.e., present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution; (c) all history of drug abuse which would warrant a treatment condition as part of sentencing; and (d) all history of mental illness or conditions which would warrant a treatment condition as part of sentencing.

17. If the Court, after reviewing this plea agreement, concludes any provision is inappropriate, it may reject the plea agreement pursuant to Rule 11(c)(5), Fed. R. Crim. P., giving the defendant, in accordance with Rule 11(d)(2)(A), Fed. R. Crim. P., an opportunity to withdraw the defendant's guilty plea.

## Restitution

18. Pursuant to 18 U.S.C. § 3663A, the defendant specifically agrees he could be required to make restitution, if determined by the court, to the following victims as set forth below. The court will determine the exact amount of restitution at the time of sentencing. The government's position is that the below victims should be entitled to receive restitution in the following amounts. The defendant understands and agrees that the government may introduce any hearsay evidence to prove the total amount of restitution:

   a. M.D. - $770,458.78 (Arizona)
   b. M.P. - $100,000 (Arizona)
   c. Y.G. - $165,563.36 (Illinois)
   d. L.F. - $48,000 (Indiana)
   e. S.S. - $6,000 (Wisconsin)
   f. C.W. - $711,651.82 (Missouri)
   g. B.W. - $234,179 (Illinois)
   h. H.W. - $215,000 (Texas)
   TOTAL Known Restitution = $2,250,852.96

19. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement. The defendant understands that the amount of restitution shall be capped at $5 million dollars.

20. The defendant agrees that the defendant will waive his/her right to appeal any order of the district court relating to restitution.

21. The defendant understands that the willful failure to pay the restitution and/or fine will be a violation of their supervised release and/or probation, which could subject the defendant to a term of prison.

## Assets and Financial Responsibility

22. The defendant agrees that the defendant will truthfully complete and return a financial affidavit that will be provided to him by the Financial Litigation Program of the United States Attorney's office within 45 days after the completed change of plea hearing (if requested by the government). The defendant further agrees the defendant shall (i) make a full accounting of all assets, including real and personal property in which the defendant has any legal or equitable interest; (ii) permit the U.S. Attorney's Office to immediately obtain the defendant's credit reports in order to evaluate the defendant's ability to satisfy any financial obligation that is or might be imposed by the court; (iii) make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Program, for any

purpose [as well as the financial condition of all household members (including but not limited to that of a spouse or child)]; (iv) cooperate fully with the government and the probation officer to execute such documentation as may be necessary to secure assets to be applied to restitution owed by the defendant. The defendant agrees to permit the probation officer to provide to the U.S. Attorney's Office copies of any and all financial information provided by the defendant to the U.S. Probation Office; (v) not (and shall not aid and abet any other party to) sell, hide, waste, spend, destroy, transfer or otherwise devalue any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures); and (vi) submit to an interview in which the defendant will fully and truthfully answer all questions regarding the defendant's past and present financial condition. The defendant agrees that any failure to comply with the provisions in this paragraph that occurs prior to sentencing will constitute a violation of this plea agreement.

23. Pursuant to 18 U.S.C. § 3613, the defendant agrees that all financial obligations imposed by the court, including restitution, shall be due immediately upon judgment, shall be subject to immediate enforcement by the government, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect any periodic payment schedule). If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program pursuant to a payment schedule to be determined by the court. The defendant understands that any schedules of payments imposed by the court, including schedules imposed while the defendant is incarcerated or on supervised release, are merely minimum schedules of payments and not the only method, nor a limitation on the methods, available to the government to enforce the judgment.

### Forfeiture, Civil, and Administrative Proceedings

24. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding

with and/or initiating an action for civil forfeiture. Further, this agreement does not preclude the United States from instituting any civil proceedings as may be appropriate now or in the future.

Waiver of Defenses and Appeal Rights

25.     Provided the defendant receives a sentence consistent with this agreement that does not exceed the statutory maximum or any stipulated sentence (a sentence of 108 months in prison or less), the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentencing-including the manner in which the sentence is determined, the determination whether defendant qualifies for "safety valve" (U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)), and any sentencing guideline determinations. The defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals to include any restitution order); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the defendant's conviction or sentence in this case. If the defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, the defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether the defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not

be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

### Reinstitution of Prosecution

26. Nothing in this agreement shall be construed to protect the defendant in any way from prosecution for perjury, false declaration or false statement, or any other offense committed by the defendant after the date of this agreement. In addition, if the defendant commits any criminal offense between the date of this agreement and the date of sentencing, the government will have the right to withdraw from this agreement. Any information, statements, documents and evidence which the defendant provides to the United States pursuant to this agreement may be used against the defendant in all such proceedings.

27. If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the defendant for all charges as to which it has knowledge, and any charges that were dismissed because of this plea agreement will be automatically reinstated. In such event, the defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings. The defendant agrees that any stipulations set forth under "Agreements Regarding Sentence" will not be offered if prosecution is re-instituted.

### Plea Addendum

28. This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal. Accordingly, additional agreements, if any, may not be in the public record.

## WAIVER OF DEFENDANT'S RIGHTS AND FACTUAL BASIS

### Waiver of Rights

29. I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions. I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel; to be presumed innocent until proven guilty beyond a reasonable doubt; and to appeal.

30. I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

31. I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have been advised by my attorney of the nature and range of the possible sentence, and that I will not be able to withdraw my guilty plea if I am dissatisfied with the sentence the court imposes.

32. My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions. I agree that any potential sentence referred to herein or discussed with my attorney is not binding on the Court and is merely an estimate.

33. I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney) that are not contained within this written plea agreement are without force and effect and are null and void.

34. I am satisfied that my defense attorney has represented me in a competent manner.

35. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

## Factual Basis and Relevant Conduct

36. I further agree that the following facts accurately describe my conduct in connection with the offense to which I am pleading guilty and that if this matter were to proceed to trial the government could prove the elements of the offense beyond a reasonable doubt:

> From a time unknown, but at least from January through May 2024, in the District of Arizona and elsewhere, I, Ahmed Maqbul Syed, and others involved, knowingly, and intentionally combined, confederated and agreed with each other to commit an ongoing Money Laundering conspiracy of fraudulent proceeds from a fraud scheme targeting victims from around the United States to include multiple victims in Arizona. These victims were defrauded in a "tech support" or "business imposter," scheme. Generally, through materially false statements, these victims were fraudulently led to believe that there was something wrong with their computers or accounts. Some victims received a "pop-up" on their electronic device that froze the device. Victims were directed to contact co-conspirators pretending to be tech support or representatives of the federal government. The fraudsters directed the victims to transfer their money to "protect" their accounts. Some victims were also directed to purchase gold to protect themselves. The victims were told that representatives from the government would retrieve the victims' gold and/or cash. In reality, these materially false representations were made to further the scheme. In furtherance of an essential part of the fraud scheme, various electronic communications in interstate or foreign commerce were initiated.

> My role in this conspiracy was to manage various money and gold runners, including my co-conspirator, Rupesh Chintakindi, who would assist in laundering the fraudulent proceeds derived from the fraud conspiracy. As part of my role, I provided burner phones to the money runners that were

used to communicate concerning the pickup and drop off locations for various gold and cash deliveries from the victims. I also helped coordinate the delivery of and transfer of fraudulent proceeds and gold from various victims around the United States. I had knowledge of the underlying fraud conspiracy and helped further that conspiracy through managing the laundering of the fraud proceeds. I entered an agreement with other individuals to assist with, conduct and attempt to conduct financial transactions involving proceeds of specified unlawful activity, that is from the wire fraud scheme. I continued my involvement in this conspiracy with knowledge that the laundered proceeds were derived from the unlawful fraud scheme. I entered an agreement with various co-conspirators to help conduct or assist in conducting the financial transactions knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the fraud scheme.

2-13-26
Date

X _____
Ahmed Maqbul Syed
Defendant

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea, including the defendant's waiver of the right to appeal. No assurances, promises, or representations have been given to me or to the defendant by the government or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R. Crim. P.

2-13-26
Date

Samm Washington
Attorney for Defendant

## GOVERNMENT'S APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

2/13/26
Date

JONATHAN B. GRANOFF
Assistant U.S. Attorney